UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

TRISH BAKER                               :
                                          :
        v.                                :        C.A. No. 08-262S
                                          :
MICHAEL J. ASTRUE                         :
Commissioner, Social Security            :
Administration                            :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

        This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Social Security Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social

Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on July 14, 2008

seeking to reverse the decision of the Commissioner.  On February 27, 2009, Plaintiff filed a

Motion to Reverse the Decision of the Commissioner.  (Document No. 8).  On April 9, 2009, the

Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.

(Document No. 10).

        This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record and the

legal memoranda filed by the parties, I find that there is substantial evidence in this record to

support the Commissioner's decision and findings that the Plaintiff is not disabled within the

meaning of the Act.  Consequently, I recommend that the Commissioner's Motion for an Order

Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that the

Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be DENIED.

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for SSI (Tr. 97-102) and DIB (Tr. 103-105) on August 18,

2006 alleging disability as of April 5, 2006.  Plaintiff was insured for DIB through March 31,

2010.  (Tr. 9).  Her claims were denied initially and on reconsideration.  (Tr. 53-69).  Plaintiff

requested an administrative hearing.  (Tr. 75).  On December 3, 2007, Administrative Law Judge

Barry H. Best ("ALJ") held a hearing at which Plaintiff, represented by counsel, and a vocational

expert ("VE") appeared and testified.  (Tr. 17-50).  The ALJ issued a decision on February 27,

2008 finding that Plaintiff was not disabled within the meaning of the Act.  (Tr. 4-16).  The

Appeals Council denied Plaintiff's request for review on May 21, 2008 (Tr. 1-3), making the

ALJ's decision the final decision of the Commissioner.  A timely appeal was then filed with this

Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's mental residual functional capacity ("RFC") findings are

not supported by substantial evidence.  In part, Plaintiff contends that the ALJ improperly

evaluated the opinions of her treating psychiatrist.  Plaintiff also argues that the ALJ failed to

follow proper standards for evaluating her credibility.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence

in the record to support the ALJ's finding that Plaintiff was not disabled during the relevant time

period.

## III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey

v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086,  1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F.

Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of

disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.      Developing the Record

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.      Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143,

146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.     The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must

consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.     Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983)

(exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.     Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which

reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)     Treatment, other than medication, for relief of pain;
>
> (5)     Functional restrictions; and
>
> (6)     The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1ˢᵗ Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.     Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1ˢᵗ Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349,

1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility

determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such

testimony or the implication must be so clear as to amount to a specific credibility finding."

Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d

1251, 1255 (11th Cir. 1983)).

## V.   APPLICATION AND ANALYSIS

Plaintiff was twenty-six years old on the date of the ALJ's decision.  (Tr. 26, 97).

Plaintiff has a high school education (Tr. 22, 121) with past relevant work as a retail

cashier/clerk.  (Tr. 119).  Plaintiff alleges disability due to depression, a bipolar disorder and

anxiety.  (Tr. 118).

Dr. Gerald Fontaine conducted a psychological examination of Plaintiff on October 19,

2006.  (Tr. 164-172).  Plaintiff's speech was rapid and pressured but she conversed freely,

clearly and without difficulty.  (Tr. 164).  She was able to focus, attend and concentrate

throughout the clinical session and testing.  Id.  Plaintiff indicated that she was discouraged and

frustrated due to her lack of a permanent living situation and life direction, and that she has

become very tense and anxious around large groups of people which creates difficulty focusing

and paying attention in large groups and social situations.  Id.

Plaintiff reported periods of excess energy and other periods of low mood.  Id.  Plaintiff

indicated that over the past four years she spent much time on the Internet, moved to other parts

of the country, lived with people she had met on the Internet, and then returned to Rhode Island.

(Tr. 165, 166).  Plaintiff indicated that she spent "all of her free time on the Internet chat room

meeting people." (Tr. 165).  She reported problems sleeping because her mind races and she is unable to relax.  Id.  She reported that she did not have a driver's license and will take a bus wherever she has to go.  Id.

Plaintiff indicated that she had not been under any medical care for years and had never been in any mental health treatment or on psychiatric medications.  Id.  She reported that her family life had been unstable during her teenage years and that she had been sexually abused by her father.  (Tr. 166).  Plaintiff's test results indicated a verbal IQ of 99, a performance IQ of 100, and a full-scale IQ of 100.  Id.  During IQ testing, Plaintiff was able to shift cognitive sets and focus and attend; she could remember seven digits forward and five digits backwards; and, Dr. Fontaine noted that she did not display any major deficits from a cognitive realm.  (Tr. 168).  Plaintiff's responses to the Beck Depression and Beck Anxiety Inventories indicated that she was suffering from depressive symptoms and experiencing significant anxiety symptoms.  (Tr. 168-169).

Dr. Fontaine's diagnosis was rule out bipolar disorder, panic disorder with mild agoraphobic symptoms, alcohol abuse and borderline/hysterical mixed personality disorder.  (Tr. 169).  He rated Plaintiff's global assessment of functioning ("GAF") at 55 or moderate, approaching mild symptoms.  Id.  Dr. Fontaine recommended that Plaintiff take part in therapy and take medication to reduce her symptoms.  Id.  He opined that with such help, Plaintiff should improve and suggested that she should be referred to vocational rehabilitation so she could become involved in a training program geared to her level.  (Tr. 169-170).

Dr. Fontaine concluded that based on her cognitive abilities, Plaintiff should not have any significant difficulty focusing, attending and remembering work procedures that are simple or detailed.  (Tr. 170).  He also concluded that she should be able to maintain attention and concentration as long as she is relaxed in the job setting but, during times of high panic and anxiety symptoms, her attention and concentration will decrease.  Id.  He opined that due to her high anxiety level and mood changes, Plaintiff might have mild to moderate difficulty dealing interpersonally with peers and supervisors within the work setting but should be able to maintain socially appropriate behavior.  Id.

On October 27, 2006, Dr. Litchman reviewed the various forms that Plaintiff had completed up to that point and Dr. Fontaine's report.  (Tr. 186).  He also completed a psychiatric review technique form (Tr. 174-187) and a mental RFC assessment.  (Tr. 188-191).  Dr. Litchman indicated that Plaintiff had symptoms of an affective disorder, an anxiety-related disorder, a personality disorder, and a substance addiction disorder.  (Tr. 174, 177, 179, 181, 182).  He concluded that these impairments resulted in mild restrictions of daily living activities; moderate difficulty maintaining social functioning; and moderate difficulty maintaining concentration, persistence and pace, with no episodes of decompensation.  (Tr. 184).

Dr. Litchman indicated that Plaintiff's emotional impairments did not result in a significant work-related limitation in her ability to understand and remember or in her ability to adapt and that in no areas did she have more than a moderate limitation.  (Tr. 188-189).  Dr. Litchman concluded that Plaintiff would be able to keep pace in a simple one- or two-step routine; would be able to sustain attention and concentration for two-hour spans in an eight-hour

day; and would be able to be socially appropriate with peers and supervisors in a simple task. (Tr. 190).  He also found no cognitive limitations and reported Plaintiff to be within the average range.  Id.

Plaintiff went to NRI Community Services on January 30, 2007 with complaints of panic attacks and expressed a desire to stop worrying and being irritable and to gain control of her life. (Tr. 198-209).  She reported a six-year history of feeling out of control and past instances of sexual, physical and mental abuse.  (Tr. 198).  Plaintiff reported that she was very anxious around people and has difficulty in social situations and that she was "completely overwhelmed and obsessed with thoughts of death."  Id.  Plaintiff reported that she has angry outbursts and reported cutting or deep scratching behavior in the past but was not considered to pose a current risk of injury.  (Tr. 199, 202).  Plaintiff reported that she spent about ten hours per day on the Internet.  (Tr. 201).  She reported drug use and alcohol use that consisted of drinking to complete intoxication about three times a week in the past and three times a month presently, with her most recent alcohol consumption being four days prior.  (Tr. 200).

During her initial evaluation, Plaintiff was cooperative; did not exhibit signs of being suspicious, agitated, hyperactive, or withdrawn; and, did not exhibit memory loss or difficulty concentrating.  (Tr. 201).  Intake worker, Ms. Carrie Barboza, documented chronic, delayed onset, post-traumatic stress disorder ("PTSD"), panic attacks with agoraphobia, rule out social anxiety disorder and rule out general anxiety disorder.  (Tr. 203-204).  Plaintiff's GAF was rated at 41, or serious symptoms.  (Tr. 203).

On March 13, 2007, Dr. Pamela Shervanick conducted a ninety-minute psychiatric evaluation of Plaintiff for her complaint of anxiety. (Tr. 194-197). Plaintiff told Dr. Shervanick that she had her first panic attack seven years ago at age eighteen but has learned how to calm herself down and that she continues to have them a few times a week depending on her life stressors. (Tr. 194). She also reported that she fears leaving the house and can only leave if she drinks alcohol in order to socialize, and she reported that she "rarely, if ever, does." Dr. Shervanick reported that Plaintiff "drinks alcohol only when she leaves the house to socialize, which is almost never." (Tr. 194, 195). Plaintiff further reported being very fearful of death and being preoccupied with it. (Tr. 194). Plaintiff indicated that when things are not going well "she will just pick up and move and start over again" and that she had been all around the country to avoid situations. Id.

Dr. Shervanick's mental status examination indicated that Plaintiff was extremely nervous and had poor to no eye contact. (Tr. 196). Plaintiff was tremulous at first but became more comfortable throughout the interview. Id. Plaintiff was alert and oriented in three spheres and her mood was anxious but her affect was appropriate. Id. Plaintiff indicated mild delusions which she understood to be false but she denied any hallucinations and did not have suicidal or homicidal ideation. Id. Plaintiff had good insight and judgment; her thoughts were coherent; and, she did not appear to have any cognitive deficits; but, she was reported as being very paranoid and constantly afraid of other people. Id.

Dr. Shervanick concluded that Plaintiff was "extremely crippled" by her anxiety, and features of her personality disorder have caused her "to be unable to deal with society in any

way." Id.  It was also her conclusion that Plaintiff "cannot even leave [her] house without having a drink" but "she is not someone who abuses alcohol." Id.  She opined that Plaintiff had "become unable to function in our society" because of her mental disorders.  Id.

Dr. Shervanick rated Plaintiff's GAF at 45 or serious, approaching moderate symptoms. Id.  She believed that Plaintiff would benefit from psychotropic medications even though Plaintiff was fearful of medication. (Tr. 197).  Plaintiff was to continue seeing her therapist, Ms. Barboza, with whom Plaintiff reportedly had a great rapport, and Dr. Shervanick indicated that it appeared that Plaintiff was definitely benefitting from therapy.  Id.

On March 29, 2007, it was reported that Plaintiff was having daily panic attacks but that they were "mild" and that she had agreed to take psychotropic medications to help with her symptoms. (Tr. 192).  Seroquel (for racing thoughts and paranoia), Lexapro (for anxiety) and Klonopin (for panic attacks) were prescribed. (Tr. 192-193).  In May 2007, it was reported that Plaintiff was not taking her Seroquel because she was scared of it but that she noted some improvement with Lexapro and Klonopin. (Tr. 224).  Plaintiff reported that the Klonopin was helping her to relax although she still hated going out in public and that she was feeling less depressed. Id.

On June 1, 2007, Dr. Philip Walls, a Consulting Psychiatrist, reviewed Plaintiff's medical records including the records from NRI Community Services and prepared a case analysis and an assessment of Plaintiff's ability to perform work-related mental activities. (Tr. 211-214). Dr. Walls indicated that Plaintiff's ability to understand, remember and carry out instruction was not limited by her impairments, but her ability to interact appropriately with the public was markedly

-17-

impaired and that her ability to interact appropriately with coworkers and supervisors was moderately impaired (Tr. 212-213).

Dr. Walls indicated that Plaintiff could understand and carry out tasks that were of simple or routine complexity and that she could maintain attention, persistence and pace to a normal workday and workweek. (Tr. 211). He reported that because of her anxiety and personality disorder, Plaintiff could not deal effectively with the public but could interact successfully with small numbers of coworkers and brief contact with supervisors. Id. Dr. Walls also noted that Plaintiff could adapt to changes in routines. Id.

On June 19, 2007, Plaintiff reported stopping and then re-starting her Klonopin which had been helpful with her anxiety. (Tr. 221). Plaintiff reported increased depression and Dr. Shervanick increased her dosage of Lexapro. Id. In July 2007, Plaintiff reported that she stopped taking Seroquel after taking it only twice because she did not feel that it helped her to sleep and gave her nightmares. (Tr. 219). Plaintiff reported that she still had trouble being out in public but that she was having less depressive thoughts than before. Id. It was noted that Plaintiff continued to drink alcohol, and Dr. Shervanick had a long discussion with her and noted the danger of mixing alcohol with taking Klonopin. (Tr. 219-220). Plaintiff testified that she stopped drinking after this discussion with Dr. Shervanick. (Tr. 30-31). In a July 18, 2007 summary, it was reported that Plaintiff continued to use alcohol and was consuming "10+" beers at least twice a week. (Tr. 215).

On September 28, 2007, Plaintiff went to Thundermist Health Center ("Thundermist") to "establish care" and to have General Public Assistance paperwork completed. (Tr. 258).

-18-

Plaintiff completed a health questionnaire in which she reported having all the depressive symptoms indicated more than half the days each week and nearly all of them every day.  (Tr. 255).  She indicated that these symptoms made it "very difficult" to do her work, take care of things at home or get along with people.  Id.  She completed similar questionnaires in October and November, again endorsing all of the symptoms but with slightly differing frequency and indicated that they made it "extremely difficult" to do her work, take care of things at home or get along with people.  (Tr. 254, 257).  When she went to Thundermist on October 25, 2007 for prescription refills, Plaintiff said that she had been on Lexapro for eight months but still feels "crappy all the time" and was on Lamictal for her third week and had not noticed a difference. (Tr. 262).

### A.    The ALJ's Mental RFC Assessment is Supported by Substantial Evidence

The ALJ decided this case adverse to Plaintiff at Step 5.  The ALJ found that Plaintiff's mental disorders were "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c) but not of "Listing-level" severity.  (Tr. 9).  Based on his review of the record, the ALJ assessed an RFC for a full exertional range of work with moderate nonexertional limitations in maintaining attention and concentration, and in dealing appropriately with the public, coworkers and supervisors.  (Tr. 10).  Based on this RFC, the VE testified that Plaintiff could not return to her past work as a retail cashier/clerk but could perform unskilled, light work as an assembler or inspector and unskilled, sedentary work as a jewelry worker, assembler or packager.  (Tr. 15, 46).  Since the VE testified as to significant numbers of such positions in the regional economy, the ALJ rendered a Step 5 non-disability determination.  (Tr. 16).

First, Plaintiff argues that the ALJ erred in giving "limited weight" to the assessment of her treating psychiatrist, Dr. Shervanick. Plaintiff was evaluated by Dr. Shervanick on March 13, 2007 who opined that she was "extremely crippled by her anxiety and features of her personality disorder have caused her to be unable to deal with society in any way." (Tr. 196). She added that Plaintiff had "become unable to function in our society." Id. The ALJ gave only limited weight to this assessment of total inability to function because her report conflicted with the observations of other medical sources and Plaintiff's reported activities in society. (Tr. 13-14).

Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations. 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2).

Plaintiff began treating at NRI Community Services on January 30, 2007, but there is no record that she saw Dr. Shervanick prior to the March 13, 2007 evaluation. (Exs. 5F, 9F and

11F).  Thereafter, Dr. Shervanick saw Plaintiff on four occasions (March 29, 2007; May 3, 2007; June 19, 2007 and July 10, 2007), and Plaintiff discontinued her treatment with NRI on July 18, 2007.  Id.  Plaintiff was treated at Thundermist from September 28, 2007 (Tr. 258) until the time of her ALJ hearing.  (Ex. 13F).

Although Dr. Shervanick did have a relatively short treating relationship with Plaintiff, there is no record that she had treated (or even seen) Plaintiff prior to the completion of the March 13, 2007 psychiatric assessment in issue.  (Tr. 146, 194-197).  The applicable regulations (20 C.F.R. § 404.1527(d)(2)(i)) provide that "the longer a treating source has treated [a claimant] and the more times [a claimant] ha[s] been seen by a treating source, the more weight...will [be] give[n] to the source's medical opinion."  Here, the limited duration of Plaintiff's involvement with Dr. Shervanick reduces the weight to be given to her opinions and makes them closer in nature to those from a nontreating source.

The regulations (20 C.F.R. § 404.1527(d)(2)(ii)(B)) also provide that the weight to be given to a treating source's opinion is further dependent on the extent of examinations and testing performed and the support provided for such opinion.  Here, Dr. Shervanick's report is based primarily on the history she obtained from Plaintiff at their first meeting.  (Tr. 194-195). While she did conduct a mental status examination, many of the observations noted were not remarkable.  (Tr. 196).  Dr. Shervanick observed that Plaintiff started out nervous but became more comfortable throughout the interview, she was alert and oriented, she had good insight and judgment, coherent thoughts and did not appear to have any cognitive deficits.  Id.  Plaintiff reported no hallucinations but did report "mild delusions" of which she had insight and

awareness of their false nature.  Id.  Since Plaintiff had no prior history of psychiatric treatment,

Dr. Shervanick had no other historical treatment records upon which to confirm Plaintiff's

reported history.

In evaluating the weight to be given to Dr. Shervanick's March 13, 2007 opinions, the

ALJ noted that other records (including reports from Thundermist and Dr. Fontaine) revealed

"less significant findings." (Tr. 13).  For instance, Plaintiff told Dr. Shervanick that she rarely

left the house and needed to drink alcohol to do so.  (Tr. 194-195).  However, five months

earlier, she reported to Dr. Fontaine that although she was anxious around large groups of

people, she spent "all of her free time on the Internet chat room meeting people" and that she had

traveled out of state to live with people she met on the Internet.  (Tr. 165).  She also reported

currently living with friends in either Providence or Woonsocket and that she used buses for

transportation.  Id.  Dr. Fontaine further observed that Plaintiff conversed "freely and clearly"

with him, was able to focus, attend and concentrate throughout the session, and denied "full-

blown panic attacks." (Ex. 1F).  Plaintiff did not report the delusions or paranoia she later

reported to Dr. Shervanick.  Id.  Furthermore, Plaintiff's treatment records from Thundermist

also fail to document the level of social isolation and crippling anxiety recorded by Dr.

Shervanick. (Ex. 13F). Finally, Dr. Shervanick's own subsequent treatment notes do not reflect

the severity of symptoms outlined in her initial assessment and report some improvement of

Plaintiff's symptoms with medication.  (Ex. 9F).

The ALJ also accurately noted inconsistencies between Plaintiff's reported activities and

Dr. Shervanick's opinion that Plaintiff is completely unable to function in society.  (Tr. 14).  The

ALJ has articulated, and the record supports, good reasons for his decision to give limited weight to Dr. Shervanick's total disability opinion and thus the ALJ's decision is entitled to deference.

Plaintiff also argues that, even if the ALJ were justified in discounting Dr. Shervanick's opinions, his RFC assessment imposing only moderate limitations in attention/concentration and social functioning are not supported by competent evidence. Plaintiff is incorrect. The ALJ's assessment is supported by Dr. Fontaine's October 16, 2006 evaluation (Ex. 1F) and Dr. Litchman's October 27, 2006 RFC assessment. (Exs. 3F and 4F). Finally, on June 1, 2007, Dr. Walls, a Psychiatrist, found no impairment in the ability to maintain concentration, persistence and pace and a moderate impairment in social interaction. (Tr. 211). Although Dr. Walls assessed a "substantial limitation" in Plaintiff's ability to interact with the public,[1] she concluded that Plaintiff "could interact with coworkers and supervisors away from the public." (Tr. 213).

Plaintiff also argues that the ALJ's RFC assessment is flawed because it is not supported by an RFC assessment completed by an examining physician. In support, Plaintiff cites to Vigo Ramos v. Comm'r of Social Security, 241 F. Supp. 2d 139 (D.P.R. 2003), in which the Court held that remand was warranted due to the lack of an RFC assessment performed by an examining physician.[2] The Court in Vigo Ramos cites to two First Circuit opinions (Rivera-Figueroa v. Sec'y of Health and Human Servs., 858 F.2d 48, 52 (1st Cir. 1988) and Heggarty v.

---

[1] While the ALJ assessed only a moderate impairment in dealing appropriately with the public, he concluded that Plaintiff could not return to her former retail work and, based his Step 5 finding on Plaintiff's ability to make a successful adjustment to unskilled production jobs not involving public interaction. (Tr. 15).

[2] In Torres v. Comm'r of Social Security, 2005 WL 2148321 at *1 (D.P.R. 2005), the Court explained that the Vigo Ramos line of cases dealt with cases where treating physician opinions were "in stark disaccord with the RFC assessments prepared by non-examining physicians." Here, the ALJ did not rely solely on an RFC assessment of the non-examining Psychiatrist, Dr. Walls. He also relied on the evaluation of Dr. Fontaine – an examining Psychologist. Further, Dr. Shervanick's report was based on her initial appointment with Plaintiff, and the extreme severity of the limitations opined was based primarily on Plaintiff's self-reported symptoms and not otherwise supported by the record.

Sullivan, 947 F.2d 990, 997 n.1 (1st Cir. 1991)) in support of its conclusion.  This Court reviewed both and concludes that neither precedent mandates that the ALJ must rely on an RFC assessment from an examining physician.  In Heggarty, supra, the Court criticized the practice of not having examining consultants complete RFC forms and, in Rivera-Figueroa, supra, the Court questioned an ALJ's ability to assess capacity "unaided even by an RFC assessment from a nonexamining doctor."

Here, the ALJ's RFC assessment is supported by Dr. Fontaine's evaluation (an examining Psychologist) and Dr. Walls' RFC assessment (a nonexamining Psychiatrist). (See Exs. 1F and 8F).  Plaintiff faults the ALJ's reliance on Dr. Walls' report, in part, because he "was under the mistaken impression that Dr. Shervanick was a consulting psychiatrist paid by the plaintiff's attorney, rather than [Plaintiff's] treating psychiatrist."  (Document No. 8 at p. 13).  Plaintiff misinterprets the record.  Dr. Walls never said or implied that Plaintiff's attorney "paid" Dr. Shervanick.  He said counsel "arranged" the evaluation.  (Tr. 211).  This is consistent with Dr. Shervancik's report which discloses that Plaintiff was "referred by her Social Security lawyer." (Tr. 194).  Dr. Walls was not mistaken.

Plaintiff has shown no error in the ALJ's RFC assessment warranting remand.  Since the RFC assessment is supported by substantial evidence of record, it is entitled to deference.

### B.    Plaintiff Has Shown No Error in the ALJ's Credibility Assessment

The ALJ agreed that Plaintiff's mental impairments would reasonably be expected to produce the symptoms alleged but determined that Plaintiff's statements as to the degree of impairment were "not entirely credible."  (Tr. 13).  The ALJ did not completely reject Plaintiff's

allegations, and his RFC assessment included moderate nonexertional limitations as to both attention/concentration and social functioning.

Plaintiff argues that the ALJ's reasons for discounting the credibility of her allegations is flawed because he misinterpreted the evidence and found inconsistencies where none existed. Plaintiff's argument is not supported by the record.  The ALJ essentially saw a disconnect between Plaintiff's claims of isolation and social avoidance and her history of heavy participation in Internet chat rooms and traveling to other parts of the country to reside with people she met on the Internet.  (Tr. 14).  Plaintiff also reported that she used public transportation, had recently obtained a driver's license and interacted appropriately with the various mental health professionals she encountered.  She also had developed sufficiently strong relationships with two friends, such that they were willing to provide housing to her as a roommate.

While reasonable minds could differ as to interpretation of this evidence, the issue is not whether this Court would have reached the same credibility evaluation as did the ALJ.  "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also."  Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1 (1st Cir. 1987)).  Rather, the issue is whether the ALJ's conclusions have adequate support in the record.  Since they do, there is no basis upon which to reject them in this case.

## VI.     CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order

Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that

Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed

with the Clerk of the Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv

72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review

by the District Court and the right to appeal the District Court's decision.  See United States v.

Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616

F.2d 603, 605 (1st Cir. 1980).


   /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 18, 2009